## SUPREME COURT—IN EQUITY.

J. MONTGOMERY *vs.* CHARLOTTE COADY, EXECUTRIX OF R. COADY, DECEASED, AND GUARDIAN OF THE MINOR HEIRS.

A COURT of Equity will enforce the exercise of mutual good faith between parties, where they have respectively assumed relations towards each other, which peculiarly require it.

ALLEN, C. J.

This is a bill in equity, brought by the complainant for his proportion of the rents and profits of certain real estate situated in Kaahumanu street, Honolulu, and now occupied by J. F. Colburn and others, from October 12th, 1855, to the date of the bill.

It appears by deed, bearing date 23d October, 1850, that R. C. Janion, for the consideration of $4,500, sold and made over to A. B. Howe that piece of ground on Kaahumanu street aforesaid, on which the large three-story store stands, and which the said Howe forthwith built thereon.

That, by deed bearing date November 25, 1851, said Howe, in consideration of $2,750, made over to Coady, Cahoon and Lake, then copartners, one undivided half of the said *building*, retaining the *land* to himself. And it was thereby stipulated that said Howe, his representatives and assigns, should occupy the two upper stories of said building forever, without rent, and that the said Coady, Cahoon and Lake, their representatives and assigns, should occupy the ground story of said building for five years from 28th October, 1850, without rent, and that at the end of said five years, Howe, his representatives or assigns, should fix a price at which he or they would purchase the interest of Coady, Cahoon and Lake in said *building*, or sell them his interest in said *building*, and if Coady *et als.*, their representatives or assigns, should buy Howe's interest in the building, they should then purchase all Howe's interest in the land at $4,500. Coady afterwards purchased out Cahoon and Lake's interest, and took J. C. Bullions into partnership.

By deed, bearing date Nov. 26, 1851, said Howe sold all his interest in said property to Pierce Hegarty and Henry Sea, as tenants in common, for $6,000.

By deed of mortgage, dated July 9th, 1853, Henry Sea mortgaged his moiety of said property to J. Montgomery for $1,100, and in June, 1855, said Montgomery purchased all Sea's equity of redemption therein, which, with said mortgage and interest, stood him in $3,800, for land and building.

In September, 1855, said Bullions purchased all Hegarty's moiety of Howe's interest in the land and building for $2,450, on account of the partnership of Coady & Co., and paid for by partnership funds.

The said five years for which Coady and others were to occupy the lower story, rent free, expired on the 28th October, 1855, at which time Coady and Bullions occupied it.

To carry out the contract it was incumbent on the assignees of Howe, who were, on the 28th October, 1855, the complainant in this bill, and Coady & Co., to make an offer to Coady to sell to him their interest, which was one moiety, or buy his interest, which was the same in the buildings, at his option; in this event, if Coady elected to buy, he was to pay $4,500 for the land.

It appears that on the 23d October, 1855, the complainant commenced a correspondence with Bullions, of the firm of Coady & Co., upon the subject of fixing the price at which they, as assignees of Howe, should offer to sell their interest to Coady, or buy Coady's interest in conformity with the stipulation in the indenture of the 25th Nov., 1851. No reply having been received to this note of the 23d, the complainant writes again, offering to submit the question of their respective interests to the award of persons to be mutually chosen.

On the 26th October, 1855, Mr. Bullions addresses Mr. Montgomery a note, in which he says : "I have given the matter my consideration, and am willing to join you in a proposition to Mr. Coady to name the sum of $5,000, as the consideration for which he shall buy our interest in the building, exclusive of the land, or sell to us his interest in the building."

On the same day Mr. Montgomery addresses another note in reply declining the offer of $5,000, and offering to join him in offering $100, as the price at which they should sell to Coady their interest in the building exclusive of the land, or purchase his interest in the building alone, and if this proposal did not

meet with his approval, he renewed his offer of referring the same to be fixed by competent persons mutually chosen; and that the said Bullions by letter, dated the following day, declined the foregoing propositions.

No offer was made in accordance with the terms of the indenture, and the complainant alleges the reason to be that Coady being interested in the portion of Hegarty as a partner in the house of Coady & Co., would not co-operate with the complainant, and make a reasonable proposition; that he took every means within his power to comply with the contract, but that he was prevented by Coady & Co. from doing it. Mr. Coady was in the anomalous condition of being both buyer and seller. It is contended on the part of the respondent that the efforts of the complainant with Coady & Co. to fix upon a sum to offer Coady for his interest, or receive for their interest at his option, were of no legal effect, as they resulted in no adjustment of the respective interests of the parties in the said premises, or in a division of the same.

It is alleged and admitted that the interest of Hegarty, which was the same as the complainant, was sold at public auction for $2,450 in September, 1855. This mode of sale is regarded as a proper mode of fixing value, and yet Coady & Co., who made this purchase, proposed to Mr. Montgomery to offer Coady $5,000 for his moiety of the building, carrying with it the necessity of keeping the land, which at the valuation in the contract was $4,500. The complainant regarded $5,000 an unreasonable sum; and, judging from the valuation as fixed at the auction sale, it was so.

It is contended that the complainant had subjected himself by the contract to the hazard of having an associate who would disagree upon an amount to offer; this is true—but he had not subjected himself to the hazard of having some one associated with Coady, and for the purpose of forcing the complainant to terms disproportionate to the value of the premises, or to suffer injury as he has done.

I do not regard the proposition of Coady & Co. to the complainant as *bona fide.* Coady, as the partner of Coady & Co., had put himself in a position where he was bound to act in good faith and to co-operate with the complainant in fixing a reason-

J. Montgomery *v.* Charlotte Coady.

able sum, which he did not do. The complainant conducted on the highest principles of equity in carrying out the terms of the indenture, but was defeated by the want of co-operation, as the history of the transaction fully shows. Neither equity nor law will justify an advantage to be taken from such a position voluntarily assumed. I regard the exclusive rights of Coady to the lower story as terminating on the 28th day of October, 1855.

In view of all the circumstances of the case, I am of opinion that the complainant is entitled to one-fourth part of the rents and profits arising from said premises, and one-quarter part of the ground rent, the whole of which is the interest on $4,500, the estimated value of the land. Interest to be cast on said ground rent from the time the rents were received.

It is ordered that it be referred to the Master to ascertain the whole amount of rents which have been received by the parties in interest, and report the same to the Court.

———

An appeal being taken to the full Court, ROBERTSON, J., delivered its decision as follows :

On the 7th of May last, the Chief Justice, sitting as Chancellor, made an interlocutory decree in this cause, declaring the complainant entitled to "one-fourth part of the rents and profits arising from said premises, and one-quarter part of the ground rent, the whole of which is the interest on $4,500, the estimated value of the land. Interest to be cast on said ground rent from the time the rents were received," and referred the matter to the Master to ascertain the whole amount of rents which have been received by the parties in interest, and report the same to the Court.

The facts of the case, so far as is necessary to a fair understanding of the grounds of complainant's application to the Court, are set forth in the decision of the Chief Justice.

The complainant prays that the shares of the respective parties in the land and building in controversy, and in the rents and profits heretofore received thereout, may be ascertained, and that he may have a decree for his proportion thereof ; that

a partition of the property may be decreed, between himself and the respondent, and that the portion that may be allotted to him, may henceforth be held by him in severalty, or that, in lieu thereof, he and the respondent may be decreed to hold the entire land and building, and to receive the rents and profits thereof, alternately, according to their respective shares ; and for the appointment of a receiver, etc., concluding with the usual general prayer for such other and further relief as the nature and circumstances of the case may require, and as the Court may deem just.

The principal facts affecting the case, as alleged in the bill, are admitted in the answer of the respondent, who also admits the necessity of having the rights and shares of the respective parties ascertained and divided ; and prays that the premises may be decreed to be sold, and the proceeds apportioned to the respective parties according to their several interests ; but resists the complainant's claim to any share of the rents heretofore accrued, on the ground that the assigns or representatives of A. B. Howe have never performed the covenant contained in the agreement between the said Howe, on the one part, and Coady, Cahoon and Lake, on the other part, to fix a price at which the latter could have the option of buying out the share of the former in the building, or selling out their own.

During the argument of the cause it was treated by counsel, particularly by the counsel for the respondent, as if this was a suit between A. B. Howe and Richard Coady and others, the original parties to the agreement of the 25th November, 1851 ; but, to my mind, it is in some respects very different. It is true that the assigns or representatives of Howe on the one hand, and of Coady, Cahoon and Lake on the other, are subject to the same equities, and can only have the same rights and remedies, the one against the other, that the original parties whom they now represent would have if the suit was between them. But a suit between the original parties never could have arisen from the same circumstances which lie at the foundation of the present suit. If, at the expiration of the five years agreed upon, Howe had been still living, and, being still possessed of the same interest in the premises that he had at the date of the agreement, he had fixed a price at which he would either sell

his own interest in the building to Coady, Cahoon and Lake, or purchase their interest, and they had refused either to buy or sell, then Howe might have applied to this Court for assistance to compel a specific performance of the agreement by the other parties. But the present case had its origin in a state of facts entirely different from that. Before the expiration of the term of five years, Howe had assigned his interest in the premises to Hegarty and Sea, as tenants in common; Sea's interest had passed into the hands of the complainant, and that of Hegarty had been purchased at auction by John C. Bullions, the partner in business of Richard Coady; and, on the other side, Coady had become sole owner of the interest which at first had belonged to Coady, Cahoon and Lake. When the proper time arrived for that purpose, the complainant was desirous and ready to carry out the covenant contained in the agreement of the 25th November, 1851, by fixing a price at which Mr. Coady might, at his option, buy out the interest of Howe's representatives, or sell his own. But complainant was unable to do this, because Mr. Bullions, his co-tenant, the ostensible owner in common with complainant, of Howe's former interest, refused either to unite with complainant in proposing to Coady any reasonable sum as a buying or selling price, or to leave the matter to the judgment of referees; replying to complainant's application, first, by offering to fix a sum which, on the face of it, was plainly unreasonable, and finally, by declining every overture made by the complainant. The origin of this suit then was not the refusal of Coady to listen to a proposal from Howe's representatives, in pursuance of the agreement of November, 1851, for no such proposal was ever made to Coady, but the refusal by Bullions, the co-tenant of complainant, to agree with him in carrying out the contract on their side.

I have endeavored to lay bare the root of the controversy, because, I apprehend, it must be upon the peculiar feature of the case, thus presented, that Mr. Coady in his life time resisted and the respondent now resists, the claims of the complainant.

Let us see then whether or not the respondent has assumed a tenable position of defense. Her counsel argues the case as if Howe was the complainant here, and was seeking the aid of a Court of Equity to vary the terms of his contract, or to re-

lieve him from the consequences of an improvident bargain, by which he had deprived himself of the ability to carry out the agreement of November, 1851 ; and contends that this Court cannot grant the relief which the complainant seeks to obtain. But it seems to me that this line of argument is aside from the real state of the case, and based upon erroneous premises. Howe is not the complainant in this case, nor does Montgomery, who is the complainant, ask us, as I understand it, to vary the terms of the agreement between Howe and Coady, or to relieve him against any improvident act, either of Howe, or of Howe's immediate assignee, from whom he derived title, or of himself.

The complainant's case rests upon other grounds.    The agreement of November, 1851, was not made between Howe, on the one part, and Coady, Cahoon and Lake, on the other part, for themselves alone, but was made as well for the benefit of their respective heirs and assigns.    On the one hand, it was incumbent upon Howe's representatives, at the expiration of the five years, to agree upon a price to be fixed as the buying or selling price, and to propose the same to Coady ; while, on the other hand, it was imcumbent upon Coady to refrain from doing anything, by overt act or secret collusion, to prevent Howe's representatives from doing their duty towards each other, that he might gain an advantage ; and to exercise in good faith the option reserved to himself by the original compact.

But, says the counsel for respondent, Coady himself was the real purchaser of the other moiety of Howe's interest.   Bullions was only the nominal purchaser.   When the property was put up for sale, Coady had as much right to become the purchaser of it as any one else ; and if, by reason of this, the complainant got into a position of disadvantage, that was his misfortune, and Coady could not be blamed for availing himself of the advantage he thus obtained by the exercise of shrewd business tact.

Mr. Bullions was the ostensible purchaser ; the deed of conveyance was made to him; so far as appeared outwardly, he was the real purchaser, and, when addressed by the complainant as his co-tenant, he replied in that capacity.   Although, as it now appears, from the whole facts of the case as disclosed by

the pleadings, Bullions was in fact but a nominal purchaser, the property having been paid for with partnership funds, and the amount subsequently charged to Mr. Coady, to whom also a conveyance of the legal title was finally made.

But, be that as it may, the rights of the complainant were the same, and he was not fairly dealt by. That he found himself in a position where he was unable, as one of Howe's representatives, to carry out the agreement of November, 1851, was not the result of misfortune, negligence, or any want of foresight, but was simply attributable to a want of strict good faith on the part of Mr. Bullions, who held the legal title, and had become a tenant in common of the property with the complainant. Bullions was bound to respect the rights of his co-tenant, and to co-operate with him in discharging, in good faith, the obligations that rested upon them mutually—the conditions which were annexed to their ownership of the property. If he acted otherwise, and the complainant was thereby injured, he had a right to appeal to a Court of Equity to aid him in protecting his interests, as against his co-tenant; and a Court of Equity would not have suffered any third party to obtain a benefit or unjust advantage, through collusion with Mr. Bullions, in fraud of the complainant's rights. Nothing can be clearer than the power of a Court of Equity to relieve the complainant under such circumstances as these; and to allow the respondent to resist the claims of the complainant, on the ground that he had not fulfilled a covenant which he could not fulfill without the co-operation of his co-tenant, who had refused that co-operation at the instance of the respondent himself, as the record clearly shows, would be a plain denial of justice. It is true, as has been argued, that Courts of Equity do not sit to enforce, in all cases, the principles which may be supposed to guide men of nice moral sentiments; but courts of equity do sit to enforce, in many cases, the observance of a legal or technical morality between parties who assume towards each other those relations which peculiarly demand the exercise of mutual good faith. Had Mr. Coady himself openly become the purchaser and taken the conveyance, and so have made himself tenant in common with the complainant, as to that part of the property which belonged to Howe's representatives, that cir-

Vol. ii.         42

cumstance, while it might have prevented the specific performance of the contract of November, 1851, would not have precluded the complainant, in case Coady had refused to buy out his interest, from seeking the relief that he now seeks, viz: a partition of the estate, and a division of the rents and profits. In fact, the case as now presented, occupies that predicament.

That the pleadings present such a case as entitles the complainant to relief at the hands of this Court, I think there can be no doubt, and the next question is, in what form, or on what principle shall that relief be afforded? The Chief Justice, in the interlocutory decree which has been appealed from, treats the case upon the principle that the agreement of November, 1851, not having been carried out by the parties at the time specified—the right of Coady to the exclusive occupancy of the lower story of the building having terminated on the 28th day of October, 1855—and Coady having, through Bullions, become the purchaser of an undivided half of Howe's interest in the building, and an undivided half of the land, the several parties held thenceforth as tenants in common of both the building and the land; and awards the complainant a quarter part, not only of the rents received from the building since that date, but the like share in what he terms ground rent, represented by legal interest on the sum of $4,500, the value at which Coady was bound to take the land, provided he bought out the interest of Howe, or his representatives, in the building, under the terms of the contract.

So far as that decree treats Mr. Coady as a tenant in common with the complainant, in the building and land, and requires the respondent to account for rents and profits received therefrom, I heartily concur in the same. It follows the prayer of the complainant's bill; it is consistent with the only mode of relief, perhaps, which is compatible with all the circumstances; and it makes no new contract between the parties, being simply the consequence of their own voluntary contracts. Coady's interest in the building being an undivided three-fourths, entitles the respondent to retain a corresponding share of the rents received, after allowing the complainant one-fourth part of the interest on the capital invested in the land, in the nature of ground rent, so that each may share according to his respective

interest in the property as a whole. But, I think the decree ought to require the respondent to account for rent, at an estimated value, for the lower story of the building, during the time that Coady continued to occupy the same himself, after the 28th of October, 1855. This seems to me necessary to complete the fund which is to be distributed, and to give the complainant the full benefit of the relief contemplated by the decree.

It is contended by the respondent's counsel that the interest, or ground rent, ought not to be calculated upon $4,500, which is much above the real value of the land, but upon the actual value, to be ascertained from year to year. It appears to me that there is weight in this objection. The decree being simply for an account and distribution of actual rents and profits, should, in order to be consistent in itself, adhere to the same principle throughout. But, if the ground rent is calculated upon an assumed value placed upon the land, and taken as conclusive against the respondent, because Mr. Coady agreed to that valuation for an entirely different purpose, then it seems to me that the relief granted by this part of the decree, is in the nature of damages in favor of the complainant, and so becomes inconsistent with the principle of relief upon which the decree is predicated.

I am of the opinion that the interlocutory decree, and order of reference, should be so modified as to include rent for the lower story of the building for the time during which the same was occupied by Richard Coady, or by Coady & Co., subsequently to the 28th of October, 1855 ; so that the ground rent, or interest, shall be calculated upon the actual relative value of the land, to be ascertained with reference to the times at which rents accrued, or were received ; and that the same stand affirmed, with these modifications.

Had the complainant filed his bill at any time antecedent to the conveyance of the legal title to Richard Coady, as against John C. Bullions, I think it would have been possible to have pursued another and perhaps more efficient mode of relief, upon the basis of a specific performance of the contract of November, 1851. But, as the case now stands, I consider the complainant

entitled to all he asks for, and to all that is now granted, although I think he has, to some extent, slept upon his rights.

Chief Justice ALLEN : I concur in the above decision.

Mr. Harris for complainant.

Mr. Bates for respondent.